L9RBPRES

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                         20 Cr. 416  (JSR)

5    JOAO DJALMA PRESTES JUNIOR,

6              Defendant.                 SENTENCE

7    ------------------------------x

8                                    New York, N.Y.
                                     September 27, 2021
9                                    2:00 p.m.

10
     Before:
11
                        HON. JED S. RAKOFF,
12
                                         District Judge
13

14                          APPEARANCES

15   AUDREY STRAUSS
          United States Attorney for the
16        Southern District of New York
     MICAH F. FERGENSON
17        Assistant United States Attorney

18   MATTHEW J. KLUGER
          Attorney for Defendant
19

20   ALSO PRESENT:  ADELIA DE ALMEDIA, Interpreter (Portuguese)

21

22

23

24

25

L9RBPRES

```
1              (In open court)

2              (Case called)

3              DEPUTY CLERK:  Will the parties please identify

4    themselves for the record.

5              MR. FERGENSON:  Good afternoon, your Honor.

6              Micah Fergenson for the government.

7              THE COURT:  Good afternoon.

8              MR. KLUGER:  Good afternoon, your Honor.

9              Matthew Kluger for Joao Prestes Junior.

10             THE COURT:  Good afternoon.

11             Please be seated.

12             All right.  We're here for sentence.

13             The first item is the guidelines.  The probation

14   office calculates the total offense level is 28; the Criminal

15   History Category is I; and the guideline range, therefore, is

16   78 to 97 months, which, of course, is not binding on the Court,

17   but the Court will consider it.

18             Any objection to that calculation?

19             MR. FERGENSON:  Not from the government.

20             MR. KLUGER:  Not from the defense, Judge.

21             THE COURT:  And the Court also agrees, and it will

22   adopt in its entirety, the presentence report.

23             Okay.  Let me hear first from defense counsel, then

24   from government counsel, then from the defendant, if he wishes

25   to be heard.
```

L9RBPRES

1          MR. KLUGER:  Thank you, Judge.

2          Judge, the defense is requesting a variance of 30

3    months in this case.  We feel that -- or we respectfully submit

4    to the Court that a sentence of 30 months is sufficient, but

5    not greater than necessary in this case, given all of the

6    3553(a) factors.

7          Let me first say that Mr. Prestes Junior accepts full

8    responsibility for his actions in this case.  He's pled guilty.

9    He's allocuted.  He's never minimized or done anything other

10   than accepted his responsibility.  But there are some 3553(a)

11   factors that I want to bring to the Court's attention, most of

12   which I've already raised in my submission --

13         THE COURT:  Yes, and thank you for that submission.

14         MR. KLUGER:  Thank you, Judge.

15         -- which was fairly substantial and included all sorts

16   of letters and beautiful pictures.

17         THE COURT:  Very helpful to the Court.

18         MR. KLUGER:  Just a fraction, really, of what I

19   received from his family.  I mean, really beautiful, loving

20   family.  Obviously they can't be here.  They're all in Brazil.

21   I believe they're listening on the feed, though, to the

22   sentencing with the assistance of an interpreter.

23         There were three main things I really wanted to

24   discuss briefly this afternoon, Judge.

25         First is the offense conduct itself; second is a

L9RBPRES

1    little bit of the allocation in the guidelines; and third is

2    some of the additional 3553(a) factors that apply in this case.

3            With respect to the offense conduct itself -- I'm not

4    getting into the nitty-gritty of the offense conduct.  I know

5    that is in the PSR.  I'm sure that Mr. Fergenson will address

6    those issues, but I do think that it's at least appropriate to

7    look for a second at the nature of the victims in this case.

8            We're not talking about a -- and this isn't to

9    minimize, but I think it's an important moral consideration.

10   We're not talking about a mom-and-pop shop that lost all their

11   life savings, a romance scheme where older people were

12   defrauded of all their money.  We're talking essentially about

13   fairly good size -- in some cases, multimillion-dollar

14   Brazilian businesses.  All of these businesses are in Brazil.

15           And even the nature of the offense was that they lost

16   what was believed to be fees that they were paying in

17   furtherance of receiving loans in the tens of millions of

18   dollars.

19           So we're talking about pretty good-size businesses.

20   That certainly no one's -- they're certainly victims in the

21   case, no one's disputing that, but I think there's a moral

22   difference between the type of fraud we have in a case like

23   this compared to, say, a similar case to the one I had a few

24   weeks ago in front of Judge Wood where a romance scam or where

25   people have literally lost.  And I think it takes a different

L9RBPRES

1    type of person to do that type of fraud.

2              I think it's also legitimate for the Court to consider

3    that Mr. Prestes Junior is facing a host of other litigation

4    related to essentially the same facts and circumstances that we

5    have in this case.  It's certainly not something that the Court

6    is bound by or needs to really -- I mean, we're here today for

7    this case, but Mr. Prestes Junior has been sued civilly both

8    here and in Brazil.  There's pending criminal prosecution or

9    the possibility -- from what I understand, a very good

10   possibility -- that he'll be prosecuted again when he gets back

11   to Brazil.  And I think that bodes in favor of a sentence that

12   doesn't have to encompass the entire punishment in this case.

13             Even the victim impact statements, to a certain

14   degree, were akin more to legal briefings than they were to

15   actual descriptions of financial harm.

16             Certainly the companies, and rightfully so, are upset

17   and angry that they lost money -- and they certainly have a

18   right to be, and no one disputes that and no one disputes that

19   Mr. Prestes Junior shouldn't get punished for it.  The question

20   here today is what's the sufficient punishment?  What's enough

21   punishment?

22             And the fact that there will be more punishment, both

23   financial and criminal, I think bodes or leans or mitigates in

24   favor of a sentence that doesn't perhaps need to punish

25   Mr. Prestes Junior for everything in this particular proceeding

L9RBPRES

1    that he's done.

2                  Moving to the guidelines, Judge.

3                  Obviously, I'm not going to lecture this Court on the

4    application of the sentencing guidelines, and I don't need to,

5    and I know that I don't need to.  The guidelines are

6    particularly excessive in fraud cases, and that holds true

7    here.  The guidelines are driven --

8                  THE COURT:  Well, I'll just cut you off on that.

9                  I've gone on record many times saying that the

10   guidelines are irrational, both in general, but in particular

11   as applied to fraud cases where they look solely at the amount

12   of actual or intended loss to the total exclusion, virtually,

13   of any other important factor.  So I don't -- you need not

14   pursue that line further.  You've already convinced me.

15                 MR. KLUGER:  And I appreciate that, Judge.  I was --

16   essentially, I wouldn't have gone much more deeper than that

17   but to note that that's not certainly a unique position at this

18   point.

19                 I was looking at some of the statistics in this court,

20   in the Southern District, from the Sentencing Commission data.

21   And from 2018 to 2020, the average sentence for fraud cases in

22   this district has been about 21 months, with a 12-month medium.

23   And the downward variances on fraud cases have actually gone up

24   from 55 percent in 2018, up to 71 percent in 2020.  That's

25   Sentencing Commission data.

L9RBPRES

1          I don't necessarily know that many of the other

2     learned judges in this building necessarily disagree with that

3     position at this point -- and for good reason.

4          And so, Judge, then, given the fact that we don't need

5     to spend much more time on the -- that's really the guidelines

6     argument in this case, driven essentially by the loss amount,

7     as your Honor said, with the exclusion of all the other 3553(a)

8     factors, and I think there are some significant ones in this

9     case.

10          And I would say some of it -- the top three that I'm

11     going to address briefly would be the fact that Mr. Prestes

12     Junior has no prior criminal convictions, which I'll address in

13     a moment; the exceptionally strong and loving family support

14     that he has; that he's the main strength of this family, the

15     core of this family unit; and then I'm going to speak briefly

16     about what I think is one of the more upsetting aspects of this

17     case, which is the way that Mr. Prestes Junior has essentially

18     lived during the past 13 months in the MCC, and the deplorable

19     conditions that he's been living under.

20          With respect to the -- there's no question that

21     Mr. Prestes Junior has no prior criminal record.  There's this

22     kind of noise in this case that keeps coming up by the case

23     agent -- was raising it, in Mr. Fergenson's sentencing

24     submission, that at some point there was some TV program in

25     Brazil that may or -- that suggested that Mr. Prestes Junior

L9RBPRES

1    was involved in some other type of fraudulent behavior possibly

2    related to this case.  It's unclear to me.

3          What is clear to me, what is a fact, is that there's

4    no court proceedings with respect to this.  So, I mean -- other

5    than to just prejudice the defendant and to raise --

6          THE COURT:  I'm not going to take any cognizance of

7    that, so you can move on.

8          MR. KLUGER:  I'll move on then, Judge.

9          The second -- again, we've talked briefly about the --

10   I don't think I need to go over the different letters of

11   support.

12         THE COURT:  Although I do need to point out, so often

13   I hear arguments about how -- particularly in a white-collar

14   case, how the defendant has a loving and supportive family and

15   he's been so wonderful to them and so forth.  That's not

16   irrelevant, but it is also relevant that when he chose to

17   commit criminal activity, one of his victims was his family.

18         He knowingly undertook the risk that he would deprive

19   them of his presence, of his support for whatever period of

20   time the Court will choose to impose.  So in that sense, he did

21   a severe wrong to the people who loved him most.

22         MR. KLUGER:  Your Honor is not only 100 percent

23   correct, but I think in the letter, in a moment, that I'm going

24   to read that Mr. Prestes Junior wrote to the Court, I think he

25   addresses that very issue.  I think he himself realizes that

L9RBPRES

now more than anybody, and it's significant the Court raises

the point as well, and it's also one of the last things I was

going to address.

          Mr. Prestes Junior, I think, from my speaking to him

and from looking at -- he hasn't had an easy life.  I know that

probation kind of portrays him as some like, you know, on this

pleasure cruise, driving around in his Maserati.  Yes, he spent

money to perpetuate the fraud, there's no doubt about that.

But he's had a difficult life.

          His father was murdered and a victim of crime.  His

mother passed away from -- everything I've heard from his

family, from a medical error in 2014.  The birth of his twin

daughters was not without incident, as was raised in one of the

letters to the Court.  And his daughter -- I believe it was

Fernanda -- apparently suffered from some particularly painful

and devastating condition growing up.  And I think that along

the way -- and, again, this is my own -- I think Mr. Prestes

Junior was fighting to keep this all together.

          He is the brother of four sisters, and he's kind of

the leader of the family.  And to keep everyone together and

support this family financially and morally, I do submit to the

Court that he lost his way morally in terms of raising money to

kind of keep -- and I don't know that at the time, like he does

now, that he realized ultimately what he has done, which is

essentially destroy his family to a certain extent, but he

L9RBPRES

1    realizes that now, for sure.

2                And the last thing I will address -- and again,

3    something that I'm sure I'm not the first attorney to raise

4    before this Court, but it is particularly pertinent to

5    Mr. Prestes Junior.  He spent all of his time essentially at

6    MCC in this case, which is a place that had conditions that

7    were so bad they were essentially shut down.

8                And not only did he spend his entire sentence -- his

9    entire pretrial confinement there, but of all the clients that

10   I've had, his conditions seemed worse than all.  And they were

11   all bad, but he's the only one that literally had to have

12   family call me, because he wasn't able to get off his cot

13   because there were rats and sewage, no heat.  I mean, I spoke

14   to him, he was like a zombie.  I couldn't even communicate

15   about the case, to the point where I literally had to write a

16   letter to the judge -- to the court.  There was nothing more I

17   could do.  In twenty years, I've never done that.  I mean, it's

18   not like I write -- I mean, they were horrible, the conditions

19   that he was in.

20               And to the Court -- and I know I'd be remiss if I

21   didn't thank the Court, as well as Mr. Fergenson, for stepping

22   in at that point and having Mr. Prestes Junior moved to a

23   different area, which was clearly not good either, but it

24   certainly wasn't him not being able to get off his bed where he

25   was for 24 hours a day, because he didn't want to step in a

L9RBPRES

foot of fetid sewage with rats in it.  And it's just horrible.

        But that certainly is not the way we're supposed to
treat people, particularly people accused of crimes, but even
people sentenced for crimes.

        And certainly of all the 3553(a) factors, I wouldn't
say that one is the most significant, but it's certainly one of
the most disturbing, and I think that should -- there should be
some accommodation or some consideration in the sentence for
the conditions that he's been living under and serving his time
under to that extent.

        So at the end of the day, Judge, I raise the same
question that I raised in my sentencing submission which is,
you know, how much more punishment at this point is really
necessary to achieve the purposes of sentencing?

        There are angry victims, and they certainly have a
right to their pound of flesh, so to speak.  But we're not
saying that Mr. Prestes Junior should get time served.  He
recognizes more than anyone the seriousness of the offense.  We
haven't asked for a time-served sentence.  We haven't even
asked for a two-year sentence.

        THE COURT:  No, I thought that was very realistic on
your part.

        MR. KLUGER:  And we hope so, Judge, because we didn't
just throw the numbers on the page.  There was a lot discussion
about it ahead of time.  And to Mr. Prestes Junior's credit, he

L9RBPRES

1    didn't want me to ask for a sentence -- he felt that that

2    sentence was slightly high, and I understand that from his

3    point of view, but I felt more -- taking everything into

4    account that that sentence would be something that would be

5    more fair to submit to the Court, and a sentence that was

6    sufficient, but certainly not greater than necessary.

7            So for all those reasons, Judge, all of those various

8    3553(a) factors, particularly the last ones that I addressed,

9    we would ask the Court to impose a sentence not greater than 30

10   months.

11           THE COURT:  All right.  Thank you very much.

12           Let me hear from the government.

13           MR. FERGENSON:  Thank you, your Honor.

14           I will address a few points, but hope to be brief.

15           The first is just to acknowledge how significant this

16   fraud was.  It was a complex international scheme that stole

17   over $15 million.  Just stole.  There was no business to begin

18   with.  There was no business in the beginning.  There was no

19   business at the end.  This was just a fraud.  That's the first

20   point.

21           The second point is how central Mr. Prestes Junior was

22   to that fraud.  The supposed financial entity, Some Korean

23   Group, SKG, that Mr. Prestes Junior told victims he worked for

24   that could facilitate these hundred-million-dollar loans.  The

25   domain name for somekoreangroup.com is registered all the way

L9RBPRES

1    back in 2016, and it's registered under a name Peter Seller.

2    That name is incorporated into an encrypted email address.  But

3    looking at chats with the website registrant, there is a user

4    chat where the person says, I can't send emails.  And they ask

5    them, What email are you trying to send?  And they're trying to

6    send an email to a Hotmail account that incorporates the

7    defendant's name.  That's back in 2016.

8            Now this fraud, of course, its charge starts in 2018,

9    but it shows he's central to this.  They use these kind of

10   flashy, false websites, these fake entities incorporated in

11   different places around the world to do so.

12           More to the money on how central he is.  The supposed

13   escrow company, he's actually a signatory on those bank

14   accounts.  It had four bank accounts.  He's the signatory on

15   three of them.

16           And again with the money, the majority of the money

17   that we have direct insight to because the transfers happened

18   in the United States, there were at least four other

19   co-conspirators in this case, majority of the victim money went

20   to Mr. Prestes Junior, millions of dollars.  That money got

21   transferred overseas, facilitated through shell company

22   transfers.

23           And a very important point I think, your Honor, which

24   I noted in my sentencing submission is that, because of that,

25   restitution and forfeiture is going to be a small drop in the

L9RBPRES

bucket at best.  These people are left with nothing, the

victims.

        And I want to turn back to the victims again, but

briefly, sort of, on how central a role Mr. Prestes Junior

played.  He used an alias and he used the United States.  So he

came -- he's a Brazilian national.  He came from Brazil here.

He would actually have the victims fly into the United States,

into Manhattan, and take them to a high-level suite in One

World Trade at the supposed offices of SKG and try to dazzle

and wow these victims who -- while they are not individuals,

they were entities.  He's not defrauding -- you know, this

isn't Goldman Sachs he defrauded; they are family-run

businesses.

        In fact, one of the victims in this case that I've had

a lot of communication with is literally a family team.  Others

are people who founded their companies themselves and were

starting up in search of capital in a Brazilian economy that

didn't have much to offer, very poor credit terms.

        I want to just focus on that point that he used the

United States.  He used the imprimatur of this country, of its

financial system, of this very borough's reputation

internationally, of One World Trade, as a sort of symbol of

American capitalism and legitimacy to effect the fraud.

        And I know there was some talk about these -- this

other earlier criminal proceedings in Brazil against Mr.

L9RBPRES

Prestes Junior, as appears to be the case from --

THE COURT:  I should have noted this when defense counsel raised that.  I think that's an irrelevancy.  I can't predict what's going to happen there, and I can well imagine that even if there is a proceeding there that the argument will be made there, Oh, he's already been punished enough here.  So this involves speculation that I'm not going to engage in.

MR. FERGENSON:  That my was my entire point, your Honor.  I suppose, maybe, just one last point -- and this is a risky point to make, I know, but with respect to the guidelines.

THE COURT:  Yes.  Go ahead.

I didn't bring any verbal arsenal with me, so go ahead; but I think you might have a hard row to hoe.  I would have thought the argument you would be making is, guidelines or not, 15 million bucks is a lot to defraud people of.  And, of course, the amount of loss is never an irrelevancy.  It's a relevant factor.

What I find strange is that the guidelines take that factor and make it, in effect, 70 percent or so of the guideline calculation, as if the 100 other factors -- many of which we've already discussed here today, like what kind of person was this, what was his motivation, how are the victims treated, what was the sophistication of the scheme -- all these are either ignored by the guidelines or given short shrift by

L9RBPRES

1    the guidelines, because for them, an arithmetic calculation of

2    loss is the be-all and end-all.

3            But if you want to defend that, please.

4            MR. FERGENSON:  I don't mean to take quite all that

5    on, but I would say that you could contrast a loss calculation,

6    and, therefore, the guidelines calculation in a case like this

7    would say -- a securities fraud case with a public company that

8    results in a stock price drop --

9            THE COURT:  Well, that's a good point, but the

10   point -- I think the point you're making is that, here, the

11   money went significantly to the defendant, helped fund a --

12   what you characterize, I think, not without a basis, a lavish

13   lifestyle of the -- I heard defense counsel say quite

14   eloquently about how the defendant was caring for many members

15   of his family -- and that is to his credit and will be

16   considered.  I'm not quite sure that he could have done even a

17   better job if he was driving a Ford instead of a Maserati, but

18   I think that's your point.  But I don't think it's a guideline

19   point.

20           MR. FERGENSON:  It's merely just -- that is correct,

21   your Honor.  It's merely that, I think -- well, it's not --

22           THE COURT:  I think the only other point you're

23   making -- then I'll shut up and let you finish -- is that there

24   are even more egregious cases of miscalculation under the

25   guidelines than this one, and that's true.  The absurdity of

L9RBPRES

1     the guidelines knows no limit.

2              MR. FERGENSON:  I would just phrase it in the positive

3     in this case, which is that the loss calculation -- which is

4     where the guidelines are completely teed off -- is actually not

5     a horrible measure in this case of the defendant's greed and

6     harm caused by the fraud.

7              THE COURT:  Okay.

8              MR. FERGENSON:  Thank you, your Honor.

9              THE COURT:  Thank you very much.

10             Let me hear from the defendant, if he wishes to be

11    heard.

12             MR. KLUGER:  Judge, on this particular point, we

13    had -- Mr. Prestes Junior had a letter translated into English,

14    and ask that I read it in the record rather than read it in

15    court.

16             THE COURT:  That makes perfect sense.  Sure.

17             MR. KLUGER:  Before I do that, Judge, I hesitate -- I

18    never want to open up a -- Mr. Fergenson actually just brings

19    in a point that I hadn't.  There are other co-defendants in

20    this case, and I don't know necessarily how many there are or

21    who they are or where they are.

22             THE COURT:  No, that's true.

23             MR. KLUGER:  But I don't necessarily know that it's

24    fair to put the entire burden of this case on Mr. Prestes

25    Junior.  Yes, we're not saying he wasn't a significant -- you

L9RBPRES

1    know, that he was a minor role.  We're not claiming he had a

2    minor role in this offense, but he doesn't have a role

3    enhancement either.

4            While there is a lot of money involved in this case, I

5    don't want the Court to be left with the impression that all of

6    that money just landed in Mr. Prestes Junior's hands.

7            THE COURT:  That's a fair point and well-taken.

8            MR. KLUGER:  With respect -- and getting back again --

9    because your Honor made this point earlier, but just to read

10   Mr. Prestes Junior's letter to the Court, which we edited

11   slightly for time.

12           Dear, your Honor.  I thank you for allowing me to

13   express myself to your Honor.  Since June 8, 2020, I have spent

14   many hours reflecting on my life in an effort to understand

15   what has happened.

16           Over the years, I've made mistakes, but I've always

17   tried to lead my life with dignity and respect.  I apologize to

18   the victims of my offense, and I'm sincerely sorry that anyone

19   has been hurt by my actions.

20           I worry about the effect that this has had on my

21   family; my wife, my daughters and sisters.  I lost my parents

22   at a young age, and my mother -- who was completely healthy --

23   due to a medical error.  I lost my ground and my safe haven.

24           Since my arrest, the lives of my loved ones have

25   turned to hell as worry plagues them all the time.  It's not

L9RBPRES

1   easy for them to be many miles away.  My wife has suffered the

2   most consequences, as she takes care of our twin daughters,

3   Amanda and Antonella alone, thousands of miles away, who were

4   only five months old when I was arrested, and my other three

5   daughters also suffer from my absence.

6          I worry about all of them constantly, and I am in

7   terrible pain for not being able to help them, for missing them

8   so much, and also missing having our family close together.

9          These past fifteen months have been very difficult.

10  The only thing that keeps me alive is the concern to know that

11  I have a wife, my five daughters and my sisters.  I regret all

12  the harm caused by my actions.

13         I know your Honor must weigh many factors in order to

14  sentence me.  I ask that you consider that there is much more

15  to me than my case.  I hope to return to Brazil and spend the

16  rest of the time I have left trying to make up for the harm

17  that I have caused to the victims of my crime and my family for

18  the pain I have caused them.

19         Thank you, Joao Prestes Junior.

20         THE COURT:  Thank you very much.

21         I've neglected to ask government counsel, I gather

22  that although there's already a very significant forfeiture

23  amount that's been agreed to in this case, that you want to

24  defer for up to 90 days determining the restitution amount and

25  who it should be paid to?

L9RBPRES

1          MR. FERGENSON:  Your Honor, I actually have signed

2     copies of a consent order of restitution --

3          THE COURT:  Very good.  Hand it up, please.

4          MR. FERGENSON:  -- as well as an order of forfeiture.

5          THE COURT:  Excellent.  You may hand that up.

6     Thank you.

7          All right.  Let me ask defense counsel, before you and

8     your client signed these two orders, did you go over all of

9     this with your client?

10          MR. KLUGER:  We did, your Honor.  We went over the

11     restitution order, as well as the forfeiture order.

12          THE COURT:  So he understood what these orders

13     required when he signed them?

14          MR. KLUGER:  He does, Judge.  He appreciates what they

15     say as well.

16          THE COURT:  All right.  Very good.

17          I thank counsel for both sides for their excellent

18     presentations.  Ordinarily, the sentence I would have imposed

19     in this case would have been five years.  This is because of

20     the amount of the -- the size of the crime, the sophistication

21     of the crime, the total lack of need to commit this crime in

22     any moral sense or even really financial sense, and all the

23     other factors that we have discussed in great length already,

24     as well as all the factors under Section 3553(a) which the

25     Court has considered.  But I'm going to reduce it by one year

L9RBPRES

1  to four years, 48 months.

2          And the main reason, not the only reason, but the main

3  reason I'm reducing it is the terrible conditions that the

4  defendant suffered while incarcerated in the local jail.

5          This is not the first case -- and I regret to say that

6  I suspect it won't be the last -- where there has been brought

7  to the Court's attention just how terrible conditions in both

8  the MDC and, for that matter, the MCC, have become; and that's

9  even without the additions of the pandemic, that's even without

10  the additions of the electrical failures and the heat failures

11  and things like that that occurred while this defendant was

12  incarcerated.

13          We must never forget that while defendants have

14  committed crimes that they all deserve to be punished for,

15  they, like us, are human beings and still require to be treated

16  in a civilized manner.  And I think that was less than true in

17  this defendant's case and, I'm afraid, in others.

18          I view the incarceration that he's already suffered as

19  entitled to greater weight because it was, in effect, worse

20  than anything the Court would have contemplated.

21          So the sentence of the Court is that the defendant is

22  sentenced to 48 months in prison jointly on the two counts.  No

23  fine will be imposed because of the very substantial

24  restitution that the Court is about to impose, however, there

25  is a special mandatory assessment of $200 that must be paid.

L9RBPRES

1          In terms of restitution, I have now signed both the

2     consent order of restitution and the consent preliminary order

3     of forfeiture, and I will give them to my court deputy in a

4     minute to file.  But the bottom line is that restitution must

5     be paid, jointly and severally with other defendants, in the

6     total amount of $15,266,679.10.

7          This is to be paid at the rate of 15 percent of the

8     defendant's gross monthly income, beginning a month after his

9     release from custody.  There's also a judgment that these

10    orders provide for that will be entered separately, but let me

11    hand the order now to my court deputy.

12         In terms of supervised release, normally, I would not

13    impose that because the defendant is going to be deported, and

14    that's the recommendation of the probation office.  But let me

15    just ask the government, did you want that to be imposed

16    nevertheless because it might affect the restitution payments,

17    or do you think that's just an exercise in paperwork, so to

18    speak?

19         MR. FERGENSON:  The government doesn't feel a need for

20    supervised release in this case, your Honor.

21         THE COURT:  To be frank, I think he's never going to

22    be able to pay even more than a very small fraction of this

23    amount, as the government has already assumed, so no supervised

24    release will be imposed.

25         Let me see if there's anything else we need to cover.

L9RBPRES

1    I think that's it, but let me ask counsel.

2              Before we talk about place of incarceration, anything

3    else from the government?

4              MR. FERGENSON:  Perhaps just noting that the

5    forfeiture order is in the same amount of restitution, your

6    Honor.

7              THE COURT:  I'm sorry.

8              MR. FERGENSON:  Just noting that the forfeiture amount

9    is the same as the restitution.

10             THE COURT:  Yes.  Thank you very much.  Same

11   15-million-plus dollars.

12             So let me hear from the defense if they have a

13   recommendation as to a place of incarceration.

14             MR. KLUGER:  Judge, Mr. Prestes Junior has no real

15   ties to the United States, so he's asked that the Court

16   recommend that he be designated to a facility as near to the

17   tristate area as possible.

18             THE COURT:  Okay.  I will certainly recommend it.  I'm

19   sure you told him this, I can only recommend it.  I can't order

20   it, but I will recommend it.

21             MR. KLUGER:  Correct, Judge.

22             I said Pennsylvania as well.  I don't know if the

23   Court heard me, tristate area or Pennsylvania.

24             THE COURT:  Okay.  That's fine.

25             All right.  Anything else from either counsel?

L9RBPRES

1              MR. FERGENSON:  No.

2              Thank you, your Honor.

3              THE COURT:  Then I need to advise the defendant of his

4    right of appeal.

5              Mr. Prestes Junior, you have a right to appeal the

6    sentence.  Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And if you can't afford counsel for any

9    such appeal, the Court will appoint one for you free of charge.

10             Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Very good.

13             (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25